**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

JENNIFER HAYES, et al.,

Plaintiffs,

v.

NEWMAR CORPORATION,

Defendant.

CASE NO. 3:24-CV-782-HAB

## OPINION AND ORDER

Plaintiffs Jennifer Hayes ("Hayes") and Dynasty International LLC ("Dynasty International") are suing Defendant Newmar Corporation ("Newmar") for breaching express and implied warranties under Indiana law and a violation of the Magnuson-Moss Warranty Act ("MMWA"). (ECF 1). Plaintiffs allege that after purchasing a luxury RV from Newmar, scores of defects required extensive repairs. (*Id.*). They claim they took the RV in for repair four times within the first year of ownership, putting it out of service for several months. (*Id.*). Plaintiffs also assert several of the defects underwent three separate unsuccessful repair attempts. (*Id.*).

Newmar moves for summary judgment. (ECF 14). The motion is now fully briefed and ripe for ruling. (ECF 17, 22). Because Newmar never had three separate opportunities to repair any of the RV's defects, and the repairs did not take an unreasonable amount of time, Newmar's motion will be GRANTED.

## FACTUAL BACKGROUND

The following undisputed facts are material to Newmar's motion for summary judgment: Dynasty International purchased an RV from the National Indoor RV Center ("NIRVC") in

Nevada in February 2024. (ECF 18, ¶ 1). Hayes is Dynasty International's sole LLC member and paid for the RV with her personal funds. (*Id.* ¶¶ 2, 13–14).

That March, Hayes took the RV to NIRVC for more than thirty warranty repairs. (*Id.* ¶ 4). Those repairs took eleven days. (*Id.* ¶ 20). Hayes brought the RV back to NIRVC on April 15 for seven more warranty repairs. (*Id.* ¶ 21). Only one defect, a small chip on the driver's side bay door, underwent a second repair on this visit. (*Id.*). Hayes did not present that defect for subsequent repairs. (*Id.* ¶¶ 22–24). This second set of repairs took NIRVC 49 days, and Hayes did not retrieve the RV until June 2. (*Id.* ¶ 21).

On June 16, Hayes presented the RV to NIRVC for a third time to have another long list of defects fixed. (*Id.* ¶ 22). This marked the second repair attempt for several defects. (*Id.*). Shortly after dropping the RV off, Newmar determined that the requested repairs were so extensive and complex that they wanted to complete the repairs at their factory service center in Nappanee, Indiana. (*Id.* ¶ 23). Upon learning this, Hayes emailed NIRVC to ask that they fix problems related to suspension and leveling systems before the RV got transported to Indiana. (ECF 21-3). NIRVC obliged. (ECF 14-2, at 21, 74:21–75:15).

After taking the RV to Indiana, the last set of repairs took several months. (ECF 18, ¶ 24). At some point, Hayes emailed Newmar a list of questions about the repairs. (ECF 14-7, at 5). A service representative from Newmar answered those questions on September 16. (*Id.*, at 2–5). On September 20, counsel for Plaintiffs sent a letter to Newmar noting that they had been retained and to direct all communications to Plaintiffs through them. (ECF 14-8). Three days after that, on September 23, a Newmar representative informed Hayes that the repairs were complete. (ECF 14-7, at 2). Hayes acknowledged in her deposition that the RV was ready for pickup at that time. (ECF 14-2, at 21, 75:22–76:2). Plaintiffs filed this lawsuit the very same day. (ECF 1).

Although Newmar told Hayes in August that when the repairs were done, the company would pay for her travel to pick up the RV or transport it back to her free of charge, Hayes did not pick up the RV for several months after the last set of repairs. (ECF 21-2, at 5). In fact, after Newmar informed Hayes the RV was ready for pickup, several weeks of silence followed. On November 8, Newmar's counsel sent a letter to Plaintiffs' counsel. (ECF 21-2, at 7). It noted there had been no communication since the September 20 letter, that the RV had been ready for pick-up or delivery since September 23, and offered again to set up pickup or delivery at Newmar's expense. (*Id.*). Plaintiff's counsel replied five days later, informing Newmar that Hayes would not travel to Indiana but would set up delivery. (*Id.*, at 15–16). They finally provided Newmar with the information needed for delivery on December 9. (*Id.*, at 11–15). Newmar delivered the RV to Hayes in Nevada on December 13. (ECF 18, ¶ 24).

Plaintiffs have submitted a list to the Court which details all 77 defects that they allege underwent repairs, also noting what number attempt each repair was per defect. (ECF 18, ¶ 21–25). They identify nineteen defects that they claim had three repair opportunities over four repair visits. (*Id.* ¶ 25). All others only had one or two. (*Id.*). In total, Plaintiffs allege the repairs took up 241 days in the first 10 months of ownership. (*Id.*).

Plaintiffs also retained an expert, Steven Paul ("Paul"), who inspected the RV and prepared a report during discovery. (ECF 14-6). Paul's report noted 74 defects, but only three service visits and three sets of work orders. (*Id.*, at 3–4). Paul also calculated that the RV had only spent 76 days in repair facilities over the first 177 days of ownership, not 241 days in the first 10 months. (*Id.*, at 4). He based these days on when the work orders noted repairs were completed. (*Id.*). Thus, he marked the third repair visit complete on September 20. (*Id.*). Paul concluded that Newmar had a reasonable opportunity to repair the RV's defects, the defects were not repaired in a reasonable

amount of time, and the repeat defects were not repaired within a reasonable number of attempts. (*Id.* ¶¶ 33–36).

## LEGAL STANDARD

Summary judgment is appropriate if a moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Put another way, a court will only grant summary judgment "if, on the evidence presented, no reasonable juror could return a verdict in [the non-moving party's] favor." *Sorensen v. WD–40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). When the non-moving party presents admissible evidence to a court that creates a genuine issue of material fact, that court must deny summary judgment. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). Courts do not supersede the jury's role in making credibility determinations and weighing the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

### I. Breach of Express Warranty, Implied Warranty, and MMWA Claims

The Indiana state law warranty claims and MMWA claims all rise and fall on the same legal analysis.[1] *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) ("The MMWA depends on the existence of an underlying viable state-law warranty claim, and so the two claims can be evaluated together and succeed or fail together."). The standard for proving breach is also "the

[1] The parties agree that Indiana law applies to these claims. (ECF 17, at 4; ECF 18-5).

same for both express and implied warranty claims." *Kutz v. Jayco, Inc.*, 738 F. Supp. 3d 1035, 1041 (N.D. Ind. 2023). Thus, the Court can resolve the viability of all three claims in one analysis.[2]

To prevail on a breach of warranty claim under Indiana law, Plaintiffs must prove four elements: "(1) the existence of a warranty, (2) a breach, (3) causation, and (4) damages." *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019). The parties only dispute breach and damages.

Indiana law requires purchasers to give the warrantor a reasonable opportunity to repair the defects before bringing a breach of warranty claim. *Zylstra*, 8 F.4th at 601. The Seventh Circuit has held that a "reasonable opportunity" means giving the warrantor at least three opportunities to repair the defect. *Id.* at 603 (citing *Mathews*, 931 F.3d at 622). This standard does not focus on how many specific repair attempts were made, whether one or multiple per visit. Rather, the figure that matters is how many times the purchaser *presented* the issue for repair. *See id.* (framing the inquiry as turning on how many times a defect was presented); *Kutz*, 738 F. Supp. 3d at 1039 (citing *Zylstra* and conducting the same analysis). On top of the number of attempts, courts have also interpreted the reasonable opportunity to repair requirement to include a mandate that "repairs be completed within a reasonable amount of time." *Id.*

**A. <u>Number of Repair Attempts</u>**

Out of the 77 defects Plaintiffs identify, none were presented to Newmar or its dealers for repair more than twice. Plaintiffs present a different factual narrative, arguing that NIRVC and Newmar made separate attempts to repair the defects they presented on June 16. They contend this

---

[2] Plaintiffs cite other cases from this district, to argue that the express and implied warranty claims do not necessarily rise and fall together. *Bloomer v. Thor Motor Coach Inc.*, 741 F. Supp. 3d 791, 801 (N.D. Ind. 2024); *Andersen v. Thor Motor Coach, Inc.*, 402 F. Supp. 3d 467, 481 (N.D. Ind. 2019). But these cases involve claims where *factual* distinctions existed between express and implied warranties, such as time limits and covered items. *Id.* They do not stand for the proposition that the claims would be subject to different legal standards.

means Newmar undertook 4 distinct attempts to repair the RV's defects and 19 of those defects underwent 3 separate repair attempts. This argument fails for several reasons.

First, even if true, Plaintiffs' argument concedes that 58 of the defects only underwent one or two repairs, so summary judgment is appropriate as to those defects regardless. Second, Plaintiffs argument focuses on the wrong metric. The figure that matters is how many times Plaintiffs presented defects to Newmar or its dealers. The record shows that only happened three times. Plaintiffs' own expert said as much in his report.[3] Plaintiffs did not separately present the defects to NIRVC and Newmar; NIRVC and Newmar possessed the RV for repair over one extended, uninterrupted period. And Plaintiffs' own narrative notes that when Hayes brought in the RV for the third repair visit on June 16, no defects had been presented for repair more than twice. (ECF 18, ¶ 22).[4]

Plaintiffs also cursorily note that *Zylstra* left open the question over whether the three-attempt requirement applies when a major defect makes the RV unusable in any manner. Although *Zylstra* did say as much, Hayes failed to develop this argument beyond one stray sentence. They do not identify any defect which they allege is major. Further, Seventh Circuit cases that have found major defects all did so for issues far more severe than any Plaintiffs identified. *Doman v. Heartland Recreational Vehicles, LLC*, No. 3:23-CV-218 JD, 2023 WL 6637619, at *4 (N.D. Ind. Oct. 12, 2023) (finding a major defect when the RV burst into flames, destroying it); *Herriage v.*

---

[3] Although Paul's report concluded that the repairs were not fixed within a reasonable number of attempts, his opinion does not grapple with the law that dooms Plaintiffs' claims. (ECF 14-6). It is based solely on his expertise and the facts garnered from his inspection. (*Id.*).

[4] Even if Plaintiffs' version of events would get them past summary judgment, which it does not, the record lacks any factual support for Plaintiffs' telling of the repair history. Their own expert's report only noted three repair attempts. (ECF 14-6, at 4). Hayes's own email to Newmar shows that repairs conducted at NIRVC on the suspension and leveling system defects only occurred before the RV's transport to Indiana at her personal request. (ECF 21-3, at 2). Plaintiffs cite Newmar's work orders and the RV's service history, unhelpfully failing to specify where within those hundred-plus pages of exhibits any evidence of separate repair attempts at NIRVC and Newmar's factory can be found. (ECF 18-7; ECF 18-8). After reviewing those exhibits, the Court cannot identify any such evidence.

*Forest River Inc.*, 766 F. Supp. 3d 798, 808 (N.D. Ind. 2025) (same when water intrusion led to mold growth that caused buyer to break out into hives and develop swollen eyes); *see also Massey v. Nexus RVs, LLC*, 680 F. Supp. 3d 1051, 1062 (N.D. Ind. 2023) (leveling system presented for repair twice not a major defect).

The record shows no defect was presented to Newmar three or more times. As such, no reasonable jury could find that Newmar breached express or implied warranties on that basis.

**B. <u>Time Out of Service</u>**

Plaintiffs also contend that regardless of the number of repair attempts, their claims survive summary judgment because a jury could find that the repairs took an unreasonable amount of time. Not so. Plaintiffs assert that the RV spent 241 days in the shop for repairs. They reach this figure by adding up 11 days for the first NIRVC repair, 49 days for the second NIRVC repair, and 181 days for the third repair split between NIRVC and the Newmar factory. (ECF 18, ¶ 25). This top line number lacks support from the record.[5]

The Seventh Circuit recognized in *Zylstra* that "[c]alculating the time out of service for an RV is complicated." 8 F.4th at 606. This is because RV owners often incur high storage costs when they are not using the RV and "every day that the RV sits in the repair shop, is one less day that the owner must pay for storage." *Id.* at 607. But even though factual disputes like these often preclude summary judgment, courts routinely conclude as a matter of law that an RV is not out of service when purchasers bear responsibility for not possessing the RV. *Id.* at 606–09; *Kutz*, 738 F.

---

[5] Plaintiffs insist that Newmar's failure to focus on time out of service in its motion for summary judgment waived the company's right to address their reasonable amount of time argument in its reply brief. This is wrong. The authority they cite, *Carroll v. Lynch*, 698 F.3d 561, 564 n. 2 (7th Cir. 2012), does not support their proposition. *Carroll* focuses on new legal arguments raised for the first time in a reply brief. *Id.* It does not constrain a moving party's ability to counter arguments raised in opposition to their motion. *Cf. Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) (petitioner's counterarguments waived when he "did not respond to [respondents' arguments] in his reply brief"). Further, Newmar's reply offers no new *legal* arguments on this issue. It only disputes Plaintiffs' presentation of material facts.

Supp. 3d at 1039–40 (not counting time after the purchasers told the dealer to stop repairs in anticipation of litigation).

In *Zysltra*, the plaintiffs calculated that the RV had been out of service for 230 days for 29 repairs. 8 F.4th at 603, 606. But the Seventh Circuit immediately concluded that 52 of those days were not "out of service" because it only marked time between when the plaintiffs purchased the RV and picked it up. *Id.* at 607. It also discounted four days where no warranty repairs were attempted because the service facility did not have enough workers to complete them in the allotted time. *Id.* at 607–08. Several other discounts of time made the true calculation 153 days out of service for 29 defects. *Id.* at 603, 609. As a matter of law, the *Zylstra* court concluded that this did not constitute an unreasonable amount of time. *Id.* at 609.

Like in *Zylstra*, Plaintiffs' 241-day calculation wrongly includes time that the RV was sitting at the Newmar factory available for them to pick up or arrange delivery. Eighty-one (81) days passed between September 23, when Newmar informed Hayes that the RV was ready, and December 13, when Newmar delivered the RV to Hayes in Nevada. These days cannot be considered time out of service. *See id.* at 607. Once those days are removed, that leaves Plaintiffs with at most 160 days out of service for 77 repairs.

The 153-day threshold from *Zylstra* provides a helpful benchmark, but is not a bright-line rule. *Compare Zylstra*, 8 F.4th at 603–09 (no reasonable jury could conclude 153 days for 29 defects was an unreasonable delay); *Massey*, 680 F. Supp. 3d at 1062–65 (same for 43 days to repair 29 defects); *Kutz*, 738 F. Supp. 3d at 1040–41 (same for 134 days to repair 65 defects); *St. Remy Homeowners' Ass'n, Inc. v. Standard Indus., Inc.*, 823 F. Supp. 3d 871, 881 (S.D. Ind. 2026) (no evidence to show 16-month delay was unreasonable); *with Tinnermon v. REV Recreation Grp., Inc.*, No. 1:19-CV-336-HAB, 2023 WL 1765414, at *10 (N.D. Ind. Feb. 3, 2023) (finding a

reasonable jury could conclude that more than 200 days to repair 57 defects was unreasonable); *Morris v. Jayco, Inc.*, No. 3:22-CV-00861-GSL, 2025 WL 26700, at *5 (N.D. Ind. Jan. 3, 2025) (same for 142 days to fix, at most, 2 defects).

Here, even construing the timeline in the light most favorable to Plaintiffs, they cannot establish that Newmar took an unreasonable amount of time to repair the defects. Although 160 days slightly exceeds the 153 days from *Zylstra*, Plaintiffs presented significantly more defects to Newmar: 77 as opposed to 29. The time out of service in each case is nearly identical, and Newmar proved far more efficient. Cases where courts have found triable issues of fact surrounding time out of service are readily distinguishable from this one. The times out of service were typically far longer than 153 days. *See, e.g.*, *Tinnermon*, 2023 WL 1765414, at *10 (more than 200 days); *Neary v. Thor Motor Coach, Inc.,* 2022 WL 4080899, at *4 (N.D. Ind. Sept. 6, 2022) (219 days). Or the warrantors proved much less efficient. *Morris*, 2025 WL 26700, at *5 (142 days for 1 or 2 defects). The difference between Hayes and Zylstra is a mere seven days, and Newmar made nearly triple the number of repairs.

Plaintiffs also point to Paul's expert report, which concluded that the repairs took an unreasonable amount of time. While such expert testimony may normally save a claim from summary judgment, it does not here. Paul's report does not address the law described above. When his report is matched up to the legal bars it must clear, Plaintiffs' argument falls apart. Paul only counted 76 days where the RV was out of service for repair to fix 74 defects. This is well below the 153-day guideline *Zylstra* established, and does not even come close to the more favorable figure Plaintiffs calculated themselves. Paul's version counts less than half the service time and presents an even more efficient repair timeline for Newmar. Based on the Seventh Circuit precedents already described, Plaintiff's claim would fail as a matter of law even faster under

Paul's version of events. Plaintiffs identify no case that has survived summary judgment with anywhere near as few as 76 days for repairs. The closest example they identify took nearly twice as long. *Morris*, 2025 WL 26700, at *5 (142 days).

In sum, no jury could find that Newmar had a reasonable opportunity to repair the RV's defects or that the RV was out of service for an unreasonable amount of time. Plaintiffs' case thus cannot withstand summary judgment.[6]

## CONCLUSION

Newmar's motion for summary judgment (ECF 14) is GRANTED.

**SO ORDERED** on September 22, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

[6] This resolution moots Newmar's arguments about Hayes's ability to personally recover and Plaintiffs' ability to obtain incidental or consequential damages.